[No. 24009. Department Two. December 21, 1932.]

RALPH SIDIS et al., *Respondents*, v. GEORGE P. ROSAIA et al., *Appellants*.[1]

*Tucker & Tucker,* for appellants.

*Pearson & Potts,* for respondents.

MAIN, J.—This action was brought to recover damages for personal injuries, and for damage to an automobile. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiffs in

[1] Reported in 17 P. (2d) 37.

the sum of four thousand dollars. Motion for new trial being made and overruled, judgment was entered upon the verdict, from which the defendants appeal.

The facts essential to present the questions to be determined may be summarized as follows: The appellants George P. Rosaia and Gilda Rosaia are husband and wife, and are the owners of a Studebaker sedan automobile. They have two daughters, named, respectively, Florine and Evelyn. The respondents, Ralph Sidis and Seniuru Sidis, are husband and wife, and are the owners of a Chevrolet sedan automobile.

The accident for which recovery was sought happened July 7, 1929, at about eleven o'clock a. m., on what is known as the Kent-Des Moines highway, in King county. The respondents, together with their two daughters and a brother of Mrs. Sidis, Albert Peha, were proceeding in the direction of Des Moines, intending to take the Redondo road and go to Redondo Beach. The Kent-Des Moines highway was paved to the width of twenty feet. None of the parties in the Chevrolet was familiar with the road. To reach Redondo Beach, it was necessary to turn to the left and take the Redondo road.

Peha, who was driving the Chevrolet, saw a road sign ahead and slowed down, intending to turn to the right on the gravel, which was of sufficient width at that place, and then ascertain from the sign, as nearly as possible, whether that was the place where they should take the Redondo road. After they had slowed down in the Chevrolet, and while it was still on the pavement, it was hit in the rear by the Studebaker sedan owned by Mr. and Mrs. Rosaia, which at the time was driven by their daughter Evelyn.

It is unnecessary here to more particularly detail the facts as to how the accident happened. It is sufficient to say that the questions of Evelyn Rosaia's negligence

and of the contributory negligence of Peha were definitely for the jury, and we do not understand it to be contended otherwise.

As a result of the collision, the Chevrolet went into the ditch, and Mrs. Sidis suffered a severe injury to her right knee. After the accident, Evelyn Rosaia caused the young lady who was riding with her at the time to write the name of Florine Rosaia on a piece of paper, together with the telephone number and street number of the house of her parents where she resided, and this piece of paper was given to Peha, the driver of the Chevrolet. The reason that Evelyn caused Florine's name to be written on the paper, as she testified, was because she did not have a driver's license at the time, although she had made application therefor. Subsequently, the present action was brought against Mr. and Mrs. Rosaia and their daughter Florine.

During the trial, it definitely appeared from the evidence that Evelyn Rosaia was driving the car at the time of the accident, and not Florine. The answer of the appellants did not disclose that Florine was not the driver of the car at the time of the accident. At the conclusion of the evidence, the appellants moved that the action as to Florine be dismissed. This motion was granted, the court announcing that a motion to substitute Evelyn for Florine would be entertained. This motion was interposed, and the substitution made. Evelyn Rosaia was present during the trial, and testified. Prior to the trial, she had gone to the place of the accident with her father, an engineer, and one of the counsel for the appellants, and thus assisted in the preparation of the case for trial.

The first question is whether the court erred in making the substitution just recited. Evelyn Rosaia, by delivering to Peha just after the accident the slip

of paper referred to, upon which was written the name of Florine, in effect, said that she was Florine, and on this assumption the action was brought against Florine and not against Evelyn. The negligence which caused the accident, as found by the jury, was that of Evelyn, and, she having been guilty of misleading the respondents as to the one who caused the accident, it would seem that she should not be heard to say that she should not be substituted as a party to the action when that fact appeared and no prejudice resulted in so doing, because she was present during the trial, testified as a witness, and assisted in the preparation of the case for trial. Surprise was not claimed when the motion was made, and no continuance was asked for. Under the circumstances, it would have been a useless proceeding to cause the parties to go out of court and again incur the trouble and expense of trying the case over again.

It is true that jurisdiction of a party to the action must ordinarily be acquired by the service of process, or by voluntary appearance. But the case now before us presents facts which take it out of the operation of that rule.

There appears to be a dearth of authority upon the precise question, and only one case has been cited which is closely analogous, and that case is *Boehmke v. Northern Ohio Traction Co.,* 88 Ohio 156, 102 N. E. 700. In that case, the plaintiff was injured while attempting to board an electric interurban railway train. He brought suit against the Akron, Bedford & Cleveland Company. Prior to the accident, the properties of that company had been taken over by the Northern Ohio Traction Company, which company owned and operated the line at the time of the accident. Attorneys employed by the latter company appeared in the action as attorneys for the Akron, Bedford & Cleve-

land Company, which was the party named as defendant. After the action had been pending for some time and depositions had been taken, the plaintiff moved that the name of the Northern Ohio Traction Company be substituted as a party defendant for that of the Akron, Bedford & Cleveland Company, and the motion was sustained. The Ohio supreme court, in the course of the opinion, said:

"The real party who did the wrong complained of was in court. It operated the railway on which it invited the plaintiff to become a passenger, under the name A. B. C. [Akron, Bedford & Cleveland Company] published on the cars. The plaintiff naturally mistook the A. B. C. Company for the owner and operator of the railway, and sued it for his damage instead of the N. O. T. Co., the real party responsible for his injury.

"The court was right in amending the proceeding by substituting the name of the real defendant for whom its own attorneys appeared and made the defense for it in fact, though *ostensibly* for the company which was sued by mistake and whose legal personality, franchises, assets, and obligations it had absorbed.

"Having voluntarily come into court, though in the guise of The A. B. C. Co., and filed an answer in its own defense, though ostensibly for the nominal defendant sued by mistake, The N. O. T. Co. stopped the statute of limitations from running in its favor during the long period it graciously permitted the case to be continued in the false hope that the bar of the statute would ripen.

"The clever argument made by counsel for defendant in error is that The N. O. T. Co. was free to let the plaintiff deceive himself to the end of time; it was not the defendant's duty to 'undeceive' him. True; and counsel frankly state that the defendant was aware of plaintiff's mistake but contributed in no way to that mistake. True, also. But that mistake became a mere *irregularity* in the judicial formulary of the suit when the real party came to the defense wearing the mask of the formal party. A court of law is a dangerous

place for masquerade, for the law looks beneath the apparent and beholds the real.

"Counsel naively assert that The N. O. T. Co. had a perfect right to employ counsel to defend for The A. B. C. Co. Yes; but at the risk of being substituted as soon as the plaintiff discovered he had sued the wrong company and that the right one was in court defending. Counsels' mistake was in thinking their client could enjoy the privilege of defending a lawsuit and dodge the responsibility that goes with it.

"Assenting to the plaintiff's mistake, the defendant accepted the suit and thus cured the irregularity. '*Consensus tollit errorem* is a maxim of the common law and the dictate of common sense,' says Broom, citing Coke, 'for *qui tacet consentire videtur.*'

"The defendant's innocent mistake of law neatly and effectually corrected the plaintiff's innocent mistake of fact, and repaired the defect in the title of the suit."

While the facts in that case are somewhat different from those in the case now before us, the underlying principle is the same. Here, as already pointed out, Evelyn Rosaia, who, the jury found, was the wrongdoer, wilfully misled the respondents into the belief that she was Florine, against whom the action was brought, and, previous to the trial and upon the trial of the action, took the same part as though she had been named a party defendant. The court was clearly right in permitting the substitution. No rights of Evelyn Rosaia were invaded, and the trouble and expense of another trial were avoided.

The next question is whether the trial court erred in one of the instructions to the jury. In instruction No. 12, the jury were told that, if Peha was guilty of negligence in any manner and that such negligence "was the proximate cause of the accident, then the plaintiffs cannot recover," and this is the instruction complained of. In instruction No. 4, the

jury were told that contributory negligence, which "in any appreciable degree directly or proximately contributed" to the injury, would bar a recovery. In instruction No. 8, they were told that, if the driver of the respondent's automobile was guilty of negligence and such negligence caused or contributed to the accident, there could be no recovery. Similar language appears in instruction No. 9.

It will be observed that the language complained of in instruction No. 4 does not go to the extent of saying that contributory negligence, in order to defeat a recovery, must be the proximate cause of the accident, but only says that contributory negligence, if it is the proximate cause, would defeat a recovery. It does not seem possible that the jury could have in any wise been misled by that instruction, because the other instructions referred to made it very plain that no recovery could be had if there was contributory negligence which caused or in a material degree contributed to the accident. An inadvertence, such as appears in instruction No. 4, happens every little while, but it is not such an error as requires a reversal when the instructions, taken as a whole, show that the jury could not have been misled.

The last question is whether the damages awarded by the jury were excessive. As above stated, the verdict was for four thousand dollars. From the evidence introduced, the jury had a right to find approximately three thousand dollars as special damages. Mr. and Mrs. Sidis, prior to the accident, operated a store in which Mrs. Sidis worked with her husband. After the accident, it was necessary to employ a man who was paid twenty-five dollars a week to do the work that Mrs. Sidis had previously done, and this employment continued for a period of about two years and one-half. At the time of the accident, as stated,

594

Mrs. Sidis suffered a severe injury to her right knee, and thereafter was confined to her bed for a period of eight or nine weeks. She endured pain and suffering up to the time of the trial, which was approximately two and one-half years after the accident. Aside from the special damages, and disregarding the damage to the automobile and the doctors' expense, there would, in the verdict, be only about one thousand dollars general damages for injury to the knee and the resultant effect thereof. This certainly cannot be said to be excessive, and there is nothing to indicate that the jury were actuated by passion and prejudice in fixing the amount of the verdict.

The judgment will be affirmed.

TOLMAN, C. J., BEALS, and MILLARD, JJ., concur.