[No. 29590. Department One. July 26, 1945.]

DOLPH BLEILER, a Minor, by his Guardian ad Litem, Violet Bleiler, et al., Respondents, v. PHILIP A. WOLFF, Appellant.[1]

[1]Reported in 161 P. (2d) 145.

*Carkeek, Harris, Harris & Carroll,* for appellant.

*Mark M. Litchman,* for respondents.

JEFFERS, J.—This action was originally instituted by Violet Bleiler, as guardian *ad litem* of Dolph Bleiler, her minor son, against Philip A. Wolff, doing business as Wolff Cleaners, to recover damages for personal injuries received by Dolph, and for damages to the car being operated by him, as the result of a collision between the car being operated by Dolph and a car owned and operated by Philip Wolff. The complaint charges Mr. Wolff with the following acts

of negligence: Driving at an excessive rate of speed, and failing to accord the right of way to plaintiff.

Defendant by his answer put in issue the material allegations of the complaint, and alleged affirmatively that plaintiff was guilty of contributory negligence, because he failed to use ordinary care and caution for his own safety, in that he failed to keep a proper lookout for vehicles, failed to take heed of defendant's approaching automobile, operated his automobile on the wrong side of the street and at a negligent and unlawful rate of speed, to wit, in excess of twenty-five miles per hour, and failed to have upon the automobile he was operating special attachments to the clutch and brake pedals.

The accident occurred within the intersection of Twelfth avenue south and Sullivan street, in the city of Seattle.

The cause was tried to the court without a jury, and thereafter, on October 13, 1944, the court made and entered findings of fact, conclusions of law, and judgment. From the facts found, the court concluded that defendant was negligent in driving his automobile at the time of the accident, and that plaintiff was not guilty of contributory negligence. Judgment was entered in favor of plaintiff and against defendant for the total sum of $2,137. The judgment also awarded to Violet Bleiler, in her individual capacity (the testimony showing that she was the owner of the car plaintiff was driving), judgment in the sum of $175 for damage to the car. Defendant filed a motion for new trial, which was denied. Defendant has appealed to this court from the judgment entered.

Appellant assigns error (1) upon the failure of the trial court to find that Dolph Bleiler, the minor, was guilty of contributory negligence, in that (a) he failed to operate his car to the right of the center of the street, (b) he failed to sound his horn or stop, (c) he failed to have his automobile equipped with the attachments required by his operator's license and failed to have his car under control; (2) upon the entry by the court of judgment in favor of the guardian *ad litem* and the entry of judgment in favor of

Violet Bleiler individually; and (3) upon the denial of appellant's motion for a new trial.

We shall give a general picture of the situation leading up to the accident, and shall discuss more in detail the evidence in connection with our discussion of the assignments of error.

The accident occurred about eight o'clock on the evening of June 19, 1943, within the intersection of Twelfth avenue south and Sullivan street. The latter street runs east and west, and Twelfth avenue south runs north and south. Each of these streets has a width of twenty-five feet from curb to curb, and both are paved. The pavement was dry, the evening was clear, and it was still light at the time the accident occurred. There is a house and shrubbery in the southeast corner of Sullivan and Twelfth avenue, which obscures the view east on Sullivan street as one driving north on Twelfth avenue approaches the intersection, until one gets close to the intersection. The view south on Twelfth avenue is also obstructed as one approaches the intersection driving west on Sullivan street.

While there is some dispute in the testimony, we shall assume, as testified by appellant, that just prior to the accident there were cars parked all along the south side of Sullivan street just east of its intersection with Twelfth avenue, which further obstructed the view east on Sullivan of one approaching the intersection from the south. While there is also some dispute as to this fact, there is testimony to the effect that there were cars parked on the north side of Sullivan street east of the intersection. Neither of the streets involved is an arterial.

When speaking of respondent, it will be understood we are referring to the minor, Dolph Bleiler, except where we discuss the question of whether or not the court erred in according damages to Violet Bleiler for damage to her car.

Respondent, who was eighteen years of age, was driving west on Sullivan street in what is described as a British Austin, which is a little heavier than an American Austin. He was on his way home from Boeing's, where he worked. Riding in the seat with respondent was his cousin, Elmer

Sanford. Respondent had picked up two other boys, one of whom was riding on the running board and the other in the space back of the seat on the inside of the car. Somewhere between one hundred fifty and two hundred feet east of the intersection, respondent either stopped or slowed down, and the boy on the running board and the one in the back of the car got out. We think the facts show almost conclusively that, after the two boys got off respondent's car, he proceeded in second gear at about fifteen miles per hour toward the intersection.

Respondent first saw the Wolff car when he was about twenty feet from the intersection, at which time the Wolff car, according to respondent's testimony, was about fifty feet south of the intersection, coming north on Twelfth avenue. Respondent continued to watch the Wolff car until he (respondent) saw that appellant was not going to stop and that a collision was imminent, when he attempted to swerve to the right, or north. Respondent's car was hit on the left side, turned completely around, and finally came to rest against the curb at the northwest corner of the intersection. The Austin car was partly turned over, and respondent was thrown partly out of the car and seriously injured. Appellant's car, being much heavier, was hardly damaged at all, and appellant was not injured.

At this time, we desire to state only that appellant testified that, as he approached the intersection, he was going about ten or twelve miles per hour; that the first time he looked east on Sullivan street was when he was in the intersection, the rear of his car being about even with the south curb of Sullivan street; that, at this time, he could see one hundred feet up the north side of Sullivan street, and that he saw no car approaching on Sullivan street. This intersection being only twenty-five feet wide, it will be observed that, when appellant first looked to the east, the front end of his car must have been within three or four feet of the center of the intersection, considered from south to north. Appellant further testified that, the next he knew, the Austin car was right on him on the right; that he tried to turn his car to the right but could not clear the Austin,

and struck it on the left side; that the impact occurred about three feet east of the center of the intersection. When we refer to the center of the intersection generally, we mean a point twelve and one-half feet west of a point twelve and one-half feet north of the southeast corner of Sullivan street and Twelfth avenue.

Appellant's assignments of error pertain to the claimed contributory negligence of respondent, but before discussing these assignments we shall discuss the question of the claimed negligence of appellant, and in this connection we desire to set out some of the observations made by the trial court, as we think they conclusively show that appellant was negligent.

"Now, I'm going to take the case of the defendant. I am going to give his testimony credit for 100% truth. Where does that leave us as to whether he was negligent or not? He is the disfavored driver, coming in from the left. He was traveling on a narrow street, 25 feet wide. He was crossing a narrow street, 25 feet wide. Leaving out the question of some shrubbery which did not prevent—it is not claimed that it prevents sight up to the intersection; but I will adopt his testimony that the south side of Sullivan east of 12th was just one continuous row of parked automobiles.

"The plaintiff, or his witnesses, said there was a car or two parked on the north side of Sullivan near 12th. If that is true, that would make the traversable part of Sullivan street about 12 feet wide or 13 at the outside. Leaving out the question of whether there was a car parked on the north side of Sullivan—there was not, for the sake of this decision—then the defendant was crossing a street 25 feet wide, the south side of which was covered with parked automobiles, say, 6 feet or more wide. That would leave a street about 19 feet for the plaintiff to travel on.

"Now, the defendant is the disfavored driver. Before he got to the crossing he knew, as he said, he saw those parked automobiles there. He therefore knew that he was coming to a 25-foot street on which the south side from which he was approaching was hidden by parked automobiles. That imposed upon him a greater duty than if there had been no automobiles there. He has no right to come out onto Sulli-van street unless he has reasonable grounds for believing that there is a reasonable margin of safety.

"According to him, he couldn't see to the east on Sullivan street at all until he had gotten past that line of automobiles. When he got past that line of automobiles—and he said that his rear wheels, or the rear end of his car had just gotten to the curb line—he then looked to the right for I forget now how many feet, 100 feet, and he saw no car.

"Here he was. His car was entirely in Sullivan or nearly in Sullivan street. His eyes must have been at that time 6 feet north of the margin of Sullivan, past the obstruction made by that line of parked automobiles. He couldn't see until he got past it; and when he got past that line of automobiles, he could see only 100 feet.

"The map shows that when he gets past that line of automobiles he can see, anyhow 600 feet. He looked. He saw only 100 feet. There was no car in sight. The supreme court says if a man looks and fails to see a physical object that is bound to be there, it is a negligent look or no look at all. Was this little car within a hundred feet? Here is a most astounding part of his testimony. Was this little car within his vision?

"I am going to assume the defendant's theory that this accident happened in the center of the street 3 feet east of the point in the center of the intersection. That would be the middle of Sullivan street. If there was a car parked on the north side of Sullivan, this boy would not be negligent in driving in the center of Sullivan, especially with a bunch of cars on the south side. There would only be about 12 feet between the two rows of cars; but let's assume, for the sake of the decision, there was no car on the north side of Sullivan. Let's take the defendant's theory, the policeman's measurements that it occurred in the center of Sullivan 3 feet east of the center of the intersection.

"When the rear end of the defendant's car had just passed the curb, and his eyes were far enough north so that he could see past that line of parked cars, he must have had the front end very close to the point of collision, because it is only 12½ feet from the south curb of Sullivan to the point of impact. When the rear end of his car was just passing the curb, where was the front end of his, larger car? It couldn't have been more than a foot south of the point of impact. And he looked and didn't see the Austin car coming; and yet, the Austin car was right on top of him. . . .

"There was a collision. There is no doubt in the world about the defendant, on his own testimony, being guilty of negligence in this case."

We are entirely in accord with the conclusion reached by the trial court that appellant was negligent, for the reason stated by the trial court.

■ This case having been tried to the court, we are bound to accept the findings as verities, unless from the record it appears that they are contrary to the clear preponderance of the evidence. *Petro Paint Mfg. Co. v. Taylor*, 147 Wash. 158, 265 Pac. 155.

■ There is no question but that, under the facts in this case, appellant was the disfavored driver. Rem. Rev. Stat., Vol. 7A, § 6360-88 [P.P.C. § 295-27]; *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533.

While all rights of way are relative, the primary duty of avoiding accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times. *Martin v. Hadenfeldt, supra; Warner v. Keebler*, 200 Wash. 608, 94 P. (2d) 175.

In *Bowen v. Odland*, 200 Wash. 257, 93 P. (2d) 366, after quoting the section last above referred to, we stated:

: "This is the basic law governing vehicles at street intersections, and it was recognized by this court in the *Hadenfeldt* case."

■ A person will be deemed to have actually seen what could have been seen if he had looked. *Johnson v. Washington Route*, 121 Wash. 608, 209 Pac. 1100.

In concluding our discussion of this phase of the case, we call attention to the case of *Strouse v. Smith*, 166 Wash. 643, 8 P. (2d) 411. In the cited case, the facts upon which this court based its conclusion that the respondent Strouse was negligent are very similar to the facts in the instant case, as to when appellant looked and what he did.

■ We are of the opinion, then, that appellant was guilty of negligence which was the proximate cause of the accident, and is liable herein unless respondent was guilty of negligence which proximately contributed to the accident.

Under subdivision (a) of the first assignment of error, appellant contends that respondent was negligent in failing

to drive the Austin car to the right of the center of the street.

Rem. Rev. Stat., Vol. 7A, § 6360-75 [P.P.C. § 295-1], provides:

"Whenever any person is operating any vehicle upon any public highway of this state he shall at all times drive the same to the right of the center of such highway except when in the exercise of care in the overtaking and passing of another vehicle traveling in the same direction, or where an obstruction exists it is necessary to drive to the left of the center of such highway, providing the same is done with due care and right of way is extended to vehicles traveling in the proper direction upon the unobstructed portion of the public highway."

Appellant quotes from *Lubliner v. Ruge,* 21 Wn. (2d) 881, 153 P. (2d) 694: "A violation of the statute is negligence as a matter of law." While the foregoing quotation is true so far as it goes, the rule applicable in a case such as the instant one goes further and is as stated in *Bernard v. Portland Seattle Auto Freight,* 11 Wn. (2d) 17, 118 P. (2d) 167:

"We are committed to the rule that the violation of a statute intended and designed to prevent injury to persons or property constitutes negligence *per se* and, if it contribute proximately to injury, is actionable negligence. That is to say, while it is negligence in itself to violate a positive rule of the statute, negligence on the part of an injured person is not a bar to a recovery against a person injuring him unless his negligence in some degree contributed to the injury."

The only testimony in the record relative to where respondent was driving just prior to and at the time of the accident is that given by respondent himself and Elmer Sanford. Respondent was asked on cross-examination:

"Q. Dolph, what portion of Sullivan street were you operating the car on as you approached 12th avenue south in reference to the curbs? A. I was practically in the center of the street."

Appellant stresses the above answer in support of his contention that, at the time of the accident, respondent was on the wrong side of the street. However, on cross-examination respondent was again asked:

"Q. As you approached 12th avenue, you say you were driving about the center of Sullivan street? A. Yes. Q. Can you give us anything more definite as to where your car was, whether it was straddling the center line or to the right of it or left of it? A. Well, it was probably to the right of it, I guess. Q. You are not sure about that? A. I am not sure about that, because I was out quite a ways to avoid the parked cars in case anyone pulled out. . . . Q. When you entered the intersection, where were—with reference to the center of Sullivan street was your car? A. I was over to the north side then, because when I saw that it was going to be kind of a close one, I swung over as far as I could. Q. You swung to your right? A. Yes. Q. When did you start turning to the right? A. Well, practically as soon as I was in the intersection here I started going to my right."

Respondent further testified that when he was struck he was over to the northwest side of the intersection. A mark made by respondent on exhibit 1, a map of the intersection, to show the place where he thought the collision occurred, indicates it was a little north and west of the center of the intersection.

Elmer Sanford testified on cross-examination that respondent stopped his car about one hundred or one hundred fifty feet east of the intersection to let off the boys who were riding with him. The testimony of the witness continued:

"Q. Did he come to a complete stop in letting the boys alight? A. Yes. Q. Then he started ahead in a westerly direction on Sullivan street? A. Yes. . . . Q. Did he come to the center of Sullivan street? A. Just a ways here until we passed the cars that were parked, and then he pulled over on his own side of the street. . . . Q. In what part of the street was he traveling when he entered the intersection? A. On his own side."

This witness further testified that, when the Austin car was hit, they were about in the position indicated by respondent's mark on exhibit 1, a little northwest of the center of the intersection, which would make the point of impact north of the center of Sullivan street.

No one attempted to dispute the testimony of respondent and Sanford as to where respondent was driving just prior

to and at the time of the accident, and the only evidence that might tend to contradict the evidence of the two boys is that of a police officer who arrived at the scene of the accident sometime after it occurred, and who testified that, in his opinion, the accident took place about a *pace* east of the center of the intersection. The conclusion of the witness was based upon debris and wheel marks he found on the pavement.

While the trial court, in discussing the question of appellant's negligence, stated that he would accept appellant's theory that the accident happened three feet east of the center of the intersection, he also stated, in discussing the claimed negligence of respondent: "I think the boy (respondent) did just as he should."

■ While we are of the opinion the evidence preponderates in favor of respondent's contention that he was on the north side of the center of Sullivan street at the time of the impact, and had been at least from the time he entered the intersection, we are also of the opinion that, even if it be assumed that respondent's car was where it was placed by the police officer from the evidence he claimed to have found, the evidence did not warrant a conclusion that respondent was so driving his car at the time of the accident as to be guilty of negligence which contributed to the accident.

In other words, we are of the opinion appellant would have struck the car driven by respondent, regardless of whether respondent was driving where appellant claims he was or entirely to the right of the center of Sullivan street.

■ Appellant next argues that respondent was guilty of negligence in failing to sound his horn, citing Rem. Rev. Stat., Vol. 7A, § 6360-35 [P. P. C. § 286-3], which provides:

"Every motor vehicle shall be equipped with a suitable horn, which shall be sounded at any time when such vehicle is approaching a condition of danger or where in the exercise of due care warning should be made or at such times and under such conditions as required by law."

We are of the opinion there is no merit in this contention. It does not appear that respondent saw or knew that appel-

lant was not looking, or that he did not see respondent's car. It does not appear that the speed of appellant's car was such that he could not have stopped. In view of the situation presented, respondent had a right to assume that appellant would accord to him the right of way. *Breithaupt v. Martin,* 153 Wash. 192, 279 Pac. 568. When it became evident that appellant was not going to accord respondent the right of way, the cars were so close together it would have done no good to have sounded the horn. In other words, respondent, under the situation presented, had no occasion to believe there was going to be a collision until just before the impact.

We are of the opinion, as was the trial court, that respondent used reasonable care in entering the intersection and in attempting to avoid a collision.

█ It is claimed that respondent was negligent in failing to have his car equipped with attachments. We are satisfied that respondent's failure to have attachments to his clutch and brake pedals in no way contributed to the accident.

Respondent, some eight or nine years prior to the accident, had scarlet fever. This sickness apparently affected his legs to the extent that his knees were in such condition that he could not straighten his legs as one can who has the normal use of his legs. In October, 1941, respondent took the examination for a driver's license. A license was issued to him December 23, 1941. This license, upon the back, contained the following: "Must have special attachments to clutch and brake pedals." It is not claimed there were any attachments to the clutch or brake pedals at the time of the accident.

Respondent entered a hospital in November, 1941, for the purpose of having his legs operated upon. He remained in the hospital until August 14, 1942. Doctor LeCocq operated upon the left leg, but did not operate at that time on the right leg. The doctor testified that in August, 1942, respondent left the hospital, bearing his weight on his legs with the help of crutches; that respondent had motion in the right leg to about eighty degrees from a straight line. A brace was put on the left leg and was on at the time of

the accident. This brace could be unhooked when respondent was sitting down, to give some action in the left knee.

Respondent testified that at the time of the accident his right leg was strong and healthy, except that it would not straighten completely. He also testified that he did not find it difficult to apply the brake or the clutch. Elmer Sanford testified that respondent could drive "just like anybody."

Appellant did not point out, and there is no testimony which indicates, that the failure of respondent to have attachments of some kind on the car contributed in any way to the accident. Respondent testified he did not try to stop, but when it became evident to him that a collision was imminent, he tried to swerve to the right.

It does not appear from the record but that respondent was able to, and did, operate the clutch and brake pedals the same as a person having the normal use of his legs.

It is finally argued that the court erred in entering judgment in favor of Violet Bleiler in the sum of $175, as damages to the car.

It will be remembered that this action was brought by the minor, by his guardian *ad litem,* on the theory that the car belonged to respondent. The complaint so alleges. It first appeared that the Austin car belonged to respondent's mother, Violet Bleiler, during the opening statement of Mr. Litchman, when the following occurred. Mr. Litchman had described the injuries suffered by respondent, and had stated what respondent claimed were his damages, personally and to the car.

"THE COURT: It was the plaintiff's car? MR. LITCHMAN: That is right, the mother's car, of course. THE COURT: Can you recover that in this action? MR. LITCHMAN: Oh, yes."

No question was raised by appellant to Mr. Litchman's statement, and the case proceeded. Violet Bleiler was in court during the trial and testified fully in regard to the damage to the car and the costs of repairing it. On cross-examination she was asked if she owned the Austin at the time of the accident, and answered that she did.

While there was no formal motion made that Violet Bleiler be made a party plaintiff in her individual right, it

is apparent that all the parties and the court must have understood that, in so far as the car was concerned, Violet Bleiler was claiming damages in her own right as the owner of the car.

While certainly it would have been a more orderly procedure for counsel for respondent to have moved that Violet Bleiler be made a party plaintiff in her individual right, we are of the opinion no prejudice resulted to appellant by reason of that not having been done. To hold that Violet Bleiler cannot recover in this case for damages to the car, because she was not made a party plaintiff in the usual manner, would, as we stated in *Sidis v. Rosaia,* 170 Wash. 587, 17 P. (2d) 37, be a useless proceeding and would require the parties to incur the expense and trouble of trying the case over again on the same evidence, in so far as the claim for damages to the car is concerned.

We are of the opinion the trial court did not err in allowing recovery to Violet Bleiler in her individual right for damages to the car. See *Garvin v. Matthews,* 193 Wash. 152, 74 P. (2d) 990, where the procedure followed in the *Sidis* case, *supra,* is approved.

No question is raised in appellant's brief as to the amount of damages allowed to respondent or to Violet Bleiler for injury to the car.

For the reasons herein assigned, we are of the opinion the court properly denied the motion for new trial. We are also of the opinion the court did not err in entering judgment in favor of respondent, or in entering judgment for Violet Bleiler, individually, for damages to the car.

The judgment is affirmed.

BEALS, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.

---

September 14, 1945. Petition for rehearing denied.