18 P.3d 1144 (2001)
105 Wash.App. 80
CONSULTING OVERSEAS MANAGEMENT, LTD., Respondent,
v.
Dmitri SHTIKEL and Anatol Ionis, Appellants.
No. 46429-9-I.
Court of Appeals of Washington, Division 1.
February 26, 2001.
Reconsideration Denied April 10, 2001.
*1146 Kimberlee Walker-Olsen, Lynnwood, for appellants.
Stephen A. Bernheim, Edmonds, for respondent.
*1145 COX, J.
At issue is whether the trial court erred by imposing personal liability for a corporate loan on the corporation's officers for conversion and misrepresentation. Because there was no conversion of loan proceeds and no misrepresentation, we reverse.
Dmitri Shtikel is president of Commonwealth Enterprises, Inc., and Anatol Ionis is its treasurer. In May 1997, Shtikel, as president of Commonwealth Enterprises, Inc., entered into a loan agreement with Pegasus Aviation Company, Ltd. Pegasus loaned $550,000 to Commonwealth for the expressly stated purpose of financing the purchase and resale of a specific shipment of manganese ore produced by a Ukrainian factory. Under the agreement, Commonwealth agreed to a "one-time flat interest" payment of $200,000, due eleven days after signing. Commonwealth also agreed to make an "additional payment" of $170,000 and to repay the entire principal amount within one month. Pegasus disbursed the funds to Commonwealth by wire transfer.
For reasons not apparent in the record before us, Commonwealth was unable to purchase the manganese ore identified in the agreement. Instead, it invested the loan proceeds in various banking transactions without first advising Pegasus of the inability to fulfill the original purpose of the loan. Those investments failed, and Commonwealth lost the $550,000. It has not repaid Pegasus any of the amounts due under the loan agreement. Apparently, there is no security for the loan.
Pegasus commenced an action against Shtikel and Ionis, seeking to hold them personally liable for the loan.[1] Neither officer had either personally guaranteed the loan or signed the loan documents in his personal capacity. Pegasus later moved for summary judgment, asserting that Shtikel and Ionis had committed conversion, innocent and negligent misrepresentation, and fraudulent concealment. The trial court granted Pegasus' motion, concluding that Shtikel and Ionis had "committed the torts of conversion and negligent misrepresentation [and] are individually and personally liable for such torts."
Shtikel and Ionis appeal.

Conversion
Shtikel and Ionis argue that the trial court erred by applying the theory of constructive trust to an alleged conversion of loan proceeds, and by granting summary judgment in Pegasus' favor on its claim. We agree.
We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[3] This court reviews questions of law de novo.[4]
*1147 The tort of conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it."[5] Money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it.[6]
Under certain circumstances, corporate officers may face personal liability for tortious conduct other than by piercing the corporate veil.[7] In Dodson, our Supreme Court imposed personal liability on a corporate officer who actively participated in the conversion of plaintiff's property.[8] The court determined that "[t]he liability of an officer of a corporation for his own tort committed within the scope of his official duties is the same as the liability for tort of any other agent or servant."[9] But the court recognized that, for personal liability to arise, "the officer...must, in fact, assist his principal in the conversion."[10] It concluded that, "[w]here the officer performs an act or a series of acts which would amount to conversion if he acted for himself alone, he is personally liable, even though the acts were performed for the benefit of his principal and without profit to himself personally."[11]
Our courts have since reaffirmed this principle.[12] In Betchard-Clayton, we cited Dodson with approval and held two corporate officers personally liable for the conversion of a real estate down payment.[13] In Johnson, our Supreme Court similarly held two corporate officers personally liable for the corporation's fraud.[14] The court recognized that "an officer of a corporation who takes no part whatever in a tort committed by the corporation is not personally liable," but concluded that "this immunity vanishes if such corporate officer knowingly participated in, cooperated in the doing of, or directed that the acts be done."[15]
Here, Shtikel and Ionis do not dispute that they actively participated in the decision to invest the loan proceeds in various banking transactions after the original purpose of the loan was no longer possible. Thus, the critical question is whether Commonwealth converted the loan proceeds. Because Commonwealth's application of the loan proceeds to an alternative transaction did not constitute conversion, Shtikel and Ionis cannot be personally liable.
Pegasus argues Commonwealth and its officers committed conversion by using loan proceeds for a purpose other than that specified in the loan agreement. But the critical question here is whether the loan proceeds were owned by Commonwealth or Pegasus, not whether Commonwealth used the proceeds for a purpose other than that stated in the loan agreement.
*1148 State v. Gillespie[16] provides the answer to the question of ownership of loan proceeds. That case was a prosecution for theft.[17] The bank from which Gillespie obtained a loan claimed that the defendant had represented that the loan would be used to purchase a sailboat.[18] The bank also claimed that it was to receive a preferred marine mortgage as collateral for the loan.[19] As it turned out, the loan proceeds were used for another purpose and no collateral came to the bank.[20] The issue on appeal was whether the trial court erred in submitting to the jury an instruction on an alternative theory of theft by embezzlement.[21]
After tracing out the wording of the relevant theft and embezzlement statutes, the court concluded that once Gillespie signed the note and received the loan check, he, not the bank, owned the loan proceeds.[22] Thus, in that case, there was no embezzlement because Gillespie owned the loan funds upon disbursal by the bank.[23] Subsequent authority approves this approach.[24]
Here, as in Gillespie, Commonwealth obtained title to the proceeds upon signing the loan agreement and the disbursal of those proceeds by wire transfer. Although the loan agreement expressly provides that Commonwealth was to sign a promissory note to evidence the debt, counsel at oral argument advised that only the loan agreement is in the record before us. We deem this factual point to be insufficient to distinguish the Gillespie line of cases and the principles stated in the Uniform Commercial Code from this case. The result is the same: Commonwealth owned the funds after signing the relevant documents and the disbursal by wire transfer occurred. Because the proceeds then belonged to Commonwealth, Ionis and Shtikel did not commit conversion when they failed to apply them as specified by the loan agreement. Accordingly, there was no tort for which a court may hold Ionis and Shtikel individually liable.
Shtikel and Ionis also argue that the trial court erred by imposing a constructive trust on the proceeds. We agree.
A constructive trust is an equitable remedy that "compel[s] restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means, gains something for himself which, in equity and good conscience, he should not be permitted to hold."[25] Although courts will typically impose a constructive trust in cases of "fraud, misrepresentation, bad faith, or overreaching,"[26] they may also do so "in broader circumstances not arising to fraud or undue influence."[27] Such trusts arise "where the retention of the property would result in the unjust enrichment of the person retaining *1149 it."[28] Indeed, the primary purpose of a constructive trust is to prevent unjust enrichment.[29]
Washington courts will impose a constructive trust "when there is clear, cogent, and convincing evidence of the basis for impressing the trust."[30] These trusts arise independently of the intention of the parties, and "may arise even though acquisition of the property is not wrongful."[31]
In Betchard-Clayton, we imposed a constructive trust to return a real estate down payment to its rightful owner. There, buyers made a $10,000 down payment toward the purchase of a restaurant, and conditioned payment of the entire purchase price on the landlord's approval of the lease assignment.[32] We concluded that, when the seller was unable to obtain the landlord's consent, "the contract simply failed for want of satisfaction of a condition precedent."[33] We determined that, "[o]n the failure of the contract, the $10,000 reverted to [the buyer's] ownership, but was held by [the seller] which no longer had any right to the property."[34] We held that "[t]he imposition of a constructive trust is the appropriate equitable remedy to prevent an unjust enrichment and to return the funds to their rightful owner."[35]
Here, unlike Betchard-Clayton, Commonwealth was the rightful owner of the funds when Pegasus disbursed them. In Betchard-Clayton, "[o]n the failure of the contract, the [down payment] reverted to [the purchaser's] ownership."[36] Thus, there was a need for the trial court to impose a constructive trust to return the funds to their rightful owner. Because there was no tort of conversion here, there was no basis to impose a constructive trust on the loan proceeds.

Negligent Misrepresentation
Shtikel and Ionis argue that the trial court erred by granting summary judgment in Pegasus' favor on its claim that they committed negligent misrepresentation. Because neither Commonwealth nor its corporate officers had a duty to disclose the information allegedly wrongfully withheld, we agree.
Washington has adopted the following elements of negligent misrepresentation described in the Restatement:
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[37]
Pegasus may base its claim for negligent misrepresentation on an alleged failure to disclose if it establishes, among other things, that Commonwealth and its corporate officers had a duty to disclose the information it alleges they withheld.[38] Pegasus argues Commonwealth had a continuing duty to disclose after disbursement of the loan proceeds arising "from notions of ordinary prudence, as well as from the warranty provisions in the loan agreement."[[39]]
*1150 Pegasus' mere reference to "notions of ordinary prudence" is insufficient to establish that Commonwealth or its corporate officers had a continuing duty to disclose that it became unable to invest the loan proceeds as specified by the loan agreement. Having failed to cite any relevant authority to support this argument, we assume that Pegasus has found none. Accordingly, we reject this prong of the argument as wholly unpersuasive.
Pegasus also asserts that Commonwealth and its corporate officers had a continuing duty to disclose based on the warranty provisions contained in the loan agreement. Specifically, Pegasus points to the following provision as evidence of a continuing duty on the borrower's part to disclose that a change in circumstances made completing the manganese transaction impossible:
Each of the parties represents and warrants to the other that: ...
(F) It shall enter into and execute any and all further agreements, documents, and acknowledgements as may be necessary or beneficial to carry out the purpose of this agreement....[[40]]
Pegasus, at oral argument, suggested that the provision imposes a duty to speak after the disbursal of funds. There is no case authority to support that proposition, and not even a strained reading of the above provision supports our adoption of it.
While the above provisions might require a borrower to execute additional documents to carry out the purpose of the agreement, there is no evidence in this record that Pegasus made such a request here. It strains credulity to read this provision to require anything more than execution of additional documents. Because neither Commonwealth nor its officers had a duty to disclose the information allegedly withheld, there was no negligent misrepresentation.
In sum, this case presents no genuine issues of material fact. And Pegasus was not entitled to judgment as a matter of law, having failed to establish either a conversion of loan proceeds or a negligent misrepresentation. Absent either of these two torts, there was no basis to impose personal liability on the corporation's officers.
We reverse the summary judgment order.
WE CONCUR: BECKER, A.C.J., and GROSSE, J.
NOTES
[1] Pegasus assigned its interest in the subject matter of this case to Consulting Overseas Management, Ltd. (COM). On September 19, 2000, a court commissioner granted Pegasus' motion to substitute COM as the respondent, and we have amended the caption accordingly.
[2] CR 56(c).
[3] Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
[4] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[5] Washington St. Bank v. Medalia Healthcare L.L.C., 96 Wash.App. 547, 554, 984 P.2d 1041 (1999), review denied, 140 Wash.2d 1007, 999 P.2d 1261 (2000) (citing Judkins v. Sadler-Mac Neil, 61 Wash.2d 1, 3, 376 P.2d 837 (1962)).
[6] PUD of Lewis County v. WPPSS, 104 Wash.2d 353, 378, 705 P.2d 1195 (1985), order modified by 713 P.2d 1109 (1986) (citing Davin v. Dowling, 146 Wash. 137, 262 P. 123 (1927); Seekamp v. Small, 39 Wash.2d 578, 237 P.2d 489 (1951)).
[7] See, e.g., Dodson v. Economy Equipment Co., Inc., 188 Wash. 340, 343, 62 P.2d 708 (1936); Grayson v. Nordic Construction Co., Inc., 92 Wash.2d 548, 554, 599 P.2d 1271 (1979); Johnson v. Harrigan-Peach Land Development Co., Inc., 79 Wash.2d 745, 753, 489 P.2d 923 (1971).
[8] Dodson, 188 Wash. at 342-43, 62 P.2d 708.
[9] Dodson, 188 Wash. at 343, 62 P.2d 708.
[10] Dodson, 188 Wash. at 343, 62 P.2d 708.
[11] Dodson, 188 Wash. at 343, 62 P.2d 708.
[12] See, e.g., Betchard-Clayton, Inc. v. King, 41 Wash.App. 887, 893, 707 P.2d 1361, review denied, 104 Wash.2d 1027 (1985); Johnson, 79 Wash.2d at 753, 489 P.2d 923.
[13] Betchard-Clayton, 41 Wash.App. at 893-94, 707 P.2d 1361.
[14] Johnson, 79 Wash.2d at 753, 489 P.2d 923.
[15] Johnson, 79 Wash.2d at 753, 489 P.2d 923.
[16] 41 Wash.App. 640, 705 P.2d 808 (1985), review denied, 106 Wash.2d 1006 and 108 Wash.2d 1009 (1986).
[17] Gillespie, 41 Wash.App. at 641, 705 P.2d 808.
[18] Gillespie, 41 Wash.App. at 641, 705 P.2d 808.
[19] Gillespie, 41 Wash.App. at 641, 705 P.2d 808.
[20] Gillespie, 41 Wash.App. at 642, 705 P.2d 808.
[21] Gillespie, 41 Wash.App. at 643, 705 P.2d 808.
[22] Gillespie, 41 Wash.App. at 644, 705 P.2d 808 (citing the Uniform Commercial Code § Commercial Paper, RCW 62A.3-101 et seq., the transfer of a check vests title in the transferee. See RCW 62A.3-102(1)(a); .3-201(1); .3-202(1); Washington Comments (1), RCWA 62A.3-201(1); 11 Am.Jur.2d Bills and Notes § 368, at 391 (2d ed.1963)) (italics ours).
[23] Gillespie, 41 Wash.App. at 645, 705 P.2d 808.
[24] See State v. Berman, 50 Wash.App. 125, 131, 747 P.2d 492 (1987), review denied, 110 Wash.2d 1019 (1988) (holding it is not embezzlement to default on a loan because title to the proceeds passes when the borrower signs the promissory note).
[25] Scymanski v. Dufault, 80 Wash.2d 77, 88, 491 P.2d 1050 (1971) (quoting Seventh Elect Church v. First Seattle Dexter Horton Nat'l Bank, 162 Wash. 437, 440, 299 P. 359 (1931)) (citations omitted).
[26] Manning v. Mount St. Michael's Seminary of Philosophy and Science, 78 Wash.2d 542, 546, 477 P.2d 635 (1970); Ockfen v. Ockfen, 35 Wash.2d 439, 443, 213 P.2d 614 (1950).
[27] In re Marriage of Lutz, 74 Wash.App. 356, 368, 873 P.2d 566 (1994); (quoting Baker v. Leonard, 120 Wash.2d 538, 547, 843 P.2d 1050 (1993)).
[28] Scymanski, 80 Wash.2d at 89, 491 P.2d 1050.
[29] Scymanski, 80 Wash.2d at 88-89, 491 P.2d 1050.
[30] Baker, 120 Wash.2d at 547, 843 P.2d 1050.
[31] Mehelich v. Mehelich, 7 Wash.App. 545, 551, 500 P.2d 779 (1972) (citation omitted).
[32] Betchard-Clayton, 41 Wash.App. at 889, 707 P.2d 1361.
[33] Betchard-Clayton, 41 Wash.App. at 893, 707 P.2d 1361.
[34] Betchard-Clayton, 41 Wash.App. at 893, 707 P.2d 1361.
[35] Betchard-Clayton, 41 Wash.App. at 893, 707 P.2d 1361.
[36] Betchard-Clayton, 41 Wash.App. at 893, 707 P.2d 1361.
[37] ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 826, 959 P.2d 651 (1998) (quoting Restatement (Second) of Torts § 552(1) (1977)).
[38] Colonial Imports, Inc. v. Carlton Northwest, Inc., 121 Wash.2d 726, 731, 853 P.2d 913 (1993).
[39] Brief of Respondent, at 13.
[40] Clerk's Papers at 48.