IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of | ) | No. 80094-9-I |
| THE GILBERT MILLER | ) | |
| TESTAMENTARY CREDIT SHELTER | ) | |
| TRUST | ) | |
| | ) | PUBLISHED OPINION |
| and | ) | |
| | ) | |
| THE ESTATE OF MARY EVELYN | ) | |
| MILLER. | ) | |

BOWMAN, J. — The Estate of Mary Evelyn Miller (Estate) appeals the trial court's summary judgment order imposing a constructive trust over Mary Evelyn Miller's (Evelyn's) one-half interest in commercial property located in Lewis County in favor of the Gilbert Miller Testamentary Credit Shelter Trust (collectively the Heirs). The Estate argues that the Heirs' petition for declaration of rights over Evelyn's community interest in the commercial property is time barred by the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, statute of limitations. The Estate also contends that the court improperly interfered with the administration of a nonintervention estate and that material issues of fact remain regarding Evelyn's intent as to the disposition of her interest in the property. We hold that the Heirs' petition is not time barred and that the court did not interfere with the administration of a nonintervention estate. However, because material issues of fact remain as to Evelyn's intent with regard

to the disposition of her one-half interest in the commercial property, we reverse and remand for further proceedings.

FACTS

Gilbert Miller (Gib) and Evelyn were married and had one daughter.[1]  In 1953, Evelyn and Gib purchased commercial property in Lewis County.

Gib died in November 1998.  His will directed the creation of a marital deduction trust and a "Credit Shelter Trust."  The will provides, in pertinent part:

> If my wife survives me, I give to my trustee . . . a portion of my estate equal to the largest amount that can pass free of federal estate tax . . . . Such assets shall be held in trust for the benefit of my wife and descendants . . . . The Credit Shelter Trust shall first be funded to the maximum provided for above before the marital deduction trust is funded at all.  Except as specifically provided for, it shall be at the sole discretion of my Executor which assets shall be transferred . . . to the Credit Shelter Trust.

In 1999, Evelyn, acting as Gib's personal representative of the estate,[2] transferred Gib's one-half community interest in their Lewis County commercial property into the Credit Shelter Trust (CST), designating herself and her daughter as co-trustees.  Gib's estate closed in April 2000.  Gib and Evelyn's daughter and co-beneficiary of the CST died in October 2011.

After the death of her daughter, Evelyn revised her will.  Evelyn's will made specific bequests and designated the residue of her estate that included her one-half interest in the Lewis County commercial property to be placed in a

---

[1] Their young son died in 1951.

[2] The record is unclear as to when Evelyn was designated as the personal representative of Gib's estate; however, there is evidence that her daughter "declined to serve in favor of her mother."  Because the parties do not dispute that Evelyn served as Gib's personal representative and that the court granted Evelyn nonintervention powers, we presume she had such authority over Gib's estate.

trust for the benefit of her birthplace, the city of Winlock. Evelyn died in October 2012.

In 2014, the successor trustee of the CST filed a TEDRA petition to determine the statutory intestate beneficiaries of the CST. On December 18, 2015, the court issued an order establishing the Heirs of the CST and authorizing distribution of the CST assets. Shortly before the confirmation hearing, the Heirs learned that Evelyn's one-half interest in the commercial property was not an asset of the CST.

In June 2017, the Heirs filed a TEDRA petition for declaration of rights over Evelyn's community interest in the Lewis County commercial property. The Heirs alleged that Evelyn intended to place the entire commercial property, including her one-half community interest, into the CST. The Estate filed a motion to dismiss the Heirs' petition as barred by the three-year TEDRA statute of limitations. In opposition, the Heirs argued that the TEDRA statute of limitations does not apply to their petition because the remedy they seek is the imposition of a constructive trust in their favor over the disputed interest in the commercial property. They argued that the fraud statute of limitations governs a claim for a constructive trust and that their petition was timely under that statute. The court denied the Estate's motion to dismiss and set the case for trial.

The Estate filed a summary judgment motion to dismiss the Heirs' petition, alleging again that the petition was time barred by the TEDRA statute of limitations and that the undisputed evidence was clear that Evelyn did not intend to transfer her one-half interest in the commercial property to the CST. The trial

court denied the Estate's motion for summary judgment. Instead, the court granted summary judgment in favor of the Heirs and imposed a constructive trust over Evelyn's community interest in the Lewis County property for the benefit of the CST. The court denied the Estate's request for attorney fees and the motion for reconsideration. The Estate appeals.

ANALYSIS

The Estate contends that the court erred in granting summary judgment in favor of the Heirs. It argues that the Heirs' petition was timed barred by the TEDRA statute of limitations, that the court lacked authority to impose a constructive trust under In re Estate of Rathbone, 190 Wn.2d 332, 412 P.3d 1283 (2018), and that genuine issues of material fact remain regarding Evelyn's intent as to the disposition of her interest in the commercial property.

We review summary judgment de novo. In re Estate of Hambleton, 181 Wn.2d 802, 817, 335 P.3d 398 (2014). Summary judgment is proper only if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists where "reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). In determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party. Ranger Ins., 164 Wn.2d at 552.

4

Statute of Limitations

The parties dispute which statute of limitations applies to this case. The application of a statute of limitations is a question of law this court reviews de novo. Bennett v. Computer Task Grp., Inc., 112 Wn. App. 102, 106, 47 P.3d 594 (2002).

The Estate contends the Heirs' petition is time barred by the TEDRA statute of limitations. TEDRA establishes a three-year time limit for a beneficiary of an express trust to file a breach of trust claim against a deceased trustee. RCW 11.96A.070(1)(c)(i). RCW 11.96A.070 provides, in pertinent part:

> (1)(a) A beneficiary of an express trust may not commence a proceeding against a trustee for breach of trust more than three years after the date a report was delivered in the manner provided in RCW 11.96A.110 to the beneficiary or to a representative of the beneficiary if the report adequately disclosed the existence of a potential claim for breach of trust and informed the beneficiary of the time allowed for commencing a proceeding.
>       . . . .
>       (c) If (a) of this subsection does not apply, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within three years after the first to occur of:
>             (i) The removal, resignation, or death of the trustee.

However, TEDRA's statute of limitations does not apply to a constructive trust. RCW 11.96A.070(1)(d) states, "For purposes of this section, 'express trust' does not include . . . constructive trusts." Accordingly, we conclude the three-year TEDRA statute of limitations does not bar the petition filed by the Heirs.

The Heirs argue their petition is not time barred because the fraud statute of limitations applies to constructive trusts. RCW 4.16.080(4) establishes a three-year limitation on an "action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the

aggrieved party of the facts constituting the fraud." The Heirs cite Goodman v. Goodman, 128 Wn.2d 366, 907 P.2d 290 (1995), in support of their argument that RCW 4.16.080(4) governs.

In Goodman, the court states, "An action based on an express [trust] (or constructive trust) is subject to the three-year statute of limitations contained in RCW 4.16.080." Goodman, 128 Wn.2d at 373. However, the Heirs' reliance on Goodman is not persuasive for three reasons.

First, "[i]n cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised." Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wn.2d 816, 824, 881 P.2d 986 (1994). Goodman did not involve a constructive trust, but rather, an express trust. Goodman, 128 Wn.2d at 372-73. Any reference in Goodman to the applicability of RCW 4.16.080(4) to a constructive trust claim is mere dicta without any precedential value. See James v. McMurry, 195 Wn. App. 144, 152-53, 380 P.3d 591 (2016).

Second, Goodman was decided in 1995, four years before the Washington Legislature enacted TEDRA in 1999. S.B. 5196, 56th Leg., Reg. Sess. (Wash. 1999). The legislature may supersede, abrogate, or modify the common law. Potter v. Wash. State Patrol, 165 Wn.2d 67, 76, 196 P.3d 691 (2008). We deem the common law repealed where the language of a statute is " 'clear and explicit for this purpose.' " Potter, 165 Wn.2d at 76[3] (quoting Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va., 464 U.S. 30,

---

[3] Internal quotation marks omitted.

35-36, 104 S. Ct. 304, 78 L. Ed. 2d 29 (1983)). Although <u>Goodman</u> implies that express and constructive trusts are interchangeable for purposes of the statute of limitations, TEDRA clearly distinguishes between the two types of trusts. <u>See</u> RCW 11.96A.070(1). As it relates specifically to application of the statute of limitations, legislative action superseded <u>Goodman</u>.

Third, the cases <u>Goodman</u> cites to support applying the fraud statute of limitations to constructive trusts, <u>Viewcrest Cooperative Ass'n v. Deer</u>, 70 Wn.2d 290, 294-95, 422 P.2d 832 (1967), and <u>Arneman v. Arneman</u>, 43 Wn.2d 787, 800, 264 P.2d 256 (1953), involved allegations of fraud. <u>See Goodman</u>, 128 Wn.2d at 373. The Heirs do not allege fraud. Indeed, the Heirs specifically deny that Evelyn as personal representative of Gib's estate committed fraud or breach of fiduciary duty:

> In this case, no claim for breach of fiduciary duty is being made against Evelyn as the former Personal Representative of Gilbert Miller's estate, nor is a claim for breach of trust being made against Evelyn or [her daughter] as trustees of the CST . . . . Rather, this action has relied solely upon the Heirs seeking to impose a constructive trust to remedy Evelyn's formal oversight when she acted as Personal Representative of her husband's estate.

RCW 4.16.080(4) does not apply here.

The Washington Legislature has not adopted a specific statute of limitations for constructive trusts. A constructive trust is an equitable remedy by which a court may restore property that another has gained through questionable means, such as fraud, misrepresentation, or overreaching. <u>Consulting Overseas Mgmt., Ltd. v. Shtikel</u>, 105 Wn. App. 80, 86-87, 18 P.3d 1144 (2001). But fraud is not required and courts may also impose a constructive trust " 'in broader

7

circumstances not arising to fraud or undue influence.' " Consulting Overseas, 105 Wn. App. at 87[4] (quoting In re Marriage of Lutz, 74 Wn. App. 356, 368, 873 P.2d 566 (1994)). For example, courts may impose a constructive trust when retention of property would " 'result in the unjust enrichment of the person retaining' " the property. Consulting Overseas, 105 Wn. App. at 87 (quoting Scymanski v. Dufault, 80 Wn.2d 77, 89, 491 P.2d 1050 (1971)).

Many states apply a statute of limitations to constructive trusts based on the underlying substantive claim rather than implementing a fixed time period. See Joel Eichengrun, The Statute of Limitations for Constructive Trusts in North Carolina, 21 WAKE FOREST L. REV. 613, 613 (1985-86). Washington case law follows this reasoning. In Viewcrest Cooperative, the court concluded that RCW 4.16.080(4) governed the statute of limitations on a constructive trust claim—not because the fraud statute of limitations controls all constructive trust claims, but because the underlying substantive claim in that case was fraud:

> We agree with plaintiff that the case at bar is governed by subsection (4) of [RCW 4.16.080], being an action ["]upon the ground of fraud.["] When an agent violates his fiduciary duty by fraudulently misappropriating the funds of his principal, then an action to recover the funds is grounded upon fraud within the meaning of the statute of limitations.

Viewcrest Coop., 70 Wn.2d at 294-95.

This court may affirm summary judgment on any grounds supported by the record. Blue Diamond Grp., Inc. v. KB Seattle 1, Inc., 163 Wn. App 449, 453, 266 P.3d 881 (2011). Here, the Heirs asserted in their TEDRA petition and argued below that Evelyn's mistake of not funding the CST with the entirety of

---

[4] Internal quotation marks omitted.

the Lewis County commercial property resulted in her community interest in the property passing to an unintended beneficiary and unjustly enriched the city of Winlock.

The statute of limitations applicable to a common law cause of action for unjust enrichment is three years under RCW 4.16.080(3). Davenport v. Wash. Educ. Ass'n, 147 Wn. App. 704, 737, 197 P.3d 686 (2008). Generally, a cause of action for unjust enrichment begins to run when a party has a right to apply to a court for relief. Eckert v. Skagit Corp., 20 Wn. App. 849, 851, 583 P.2d 1239 (1978). Here, the Heirs did not have standing to file their petition until the court designated them as statutory heirs on December 18, 2015. Because the Heirs filed their petition on June 2, 2017 within the three-year time period,[5] we conclude their petition is not time barred under RCW 4.16.080(3).

Authority To Intervene

The Estate argues that the court lacked the authority to impose a constructive trust over Evelyn's community interest in the commercial property. It cites In re Estate of Rathbone to argue that the court's ruling was an unlawful intervention into the management of Gib's estate.

In Rathbone, our Supreme Court held that courts have limited authority to interfere with the decisions of personal representatives granted nonintervention powers, including a personal representative engaged in wrongdoing. Rathbone, 190 Wn.2d at 339-44. The court held:

> Once a court declares a nonintervention estate solvent, the court has no role in the administration of the estate except under narrow,

---

[5] We note the Heirs first filed a "Petition for Declaration of Rights and To Impose Constructive Trust" on December 30, 2016 under a different cause number.

statutorily created exceptions that give courts limited authority to intervene.

<u>Rathbone</u>, 190 Wn.2d at 339. The court concluded that the "power to administer an estate and 'construe' a will's directions lies with the personal representative in a nonintervention probate—not the courts." <u>Rathbone</u>, 190 Wn.2d at 345.

There is no dispute that the court granted Evelyn nonintervention powers to administer Gib's estate. Under <u>Rathbone</u>, Evelyn had the authority to construe Gib's will. However, the Heirs do not challenge Evelyn's authority to interpret Gib's intent in administering his will. Rather, the Heirs allege that Evelyn intended to place her share of the Lewis County property into the CST. <u>Rathbone</u> does not prevent the court from determining Evelyn's intent with regard to the nontestamentary disposition of her own property.

<u>Evelyn's Intent</u>

The Estate contends that the trial court erred in granting summary judgment in favor of the Heirs. It argues that genuine issues of material fact remain as to Evelyn's intent.

Summary judgment is precluded where questions remain about an individual's state of mind or intent. <u>See</u> <u>Pearson v. Gray</u>, 90 Wn. App. 911, 916-17, 954 P.2d 343 (1998). Here, the evidence viewed in a light most favorable to the nonmoving party leaves room for reasonable minds to differ about Evelyn's intent with regard to the disposition of her interest in the Lewis County commercial property.

The Heirs contend that the "undisputed facts" establish that Evelyn intended to put her one-half interest in the Lewis County commercial property

10

into the CST. They point to tax records and property management documents prepared by her advisors that treat the property as fully deeded to the CST. We disagree that these documents conclusively establish Evelyn's intent. Although the record shows that Evelyn's legal and financial advisors mistakenly believed Evelyn transferred the entire property into the CST, none of the advisors testified that Evelyn was the source of their information.

In addition, Gib's estate had a number of assets, including a pension, stocks, and retirement accounts, that the personal representative could have used to fund the CST to its capacity. The record shows that if Evelyn had transferred her community interest at the same time she transferred Gib's interest, she would have overfunded the CST by at least $2,000.[6] And contrary to the assertion of the Heirs that Evelyn would have received an additional tax benefit by transferring her community interest in the property, Evelyn's certified public accountant testified that the tax consequences to Evelyn were the same whether or not she fully funded the CST.

Further, the record shows that Gib and Evelyn's estate attorney Ralph Olson provided conflicting accounts about Evelyn's intent. In 2018, Olson testified:

> I do believe that Evelyn always intended the commercial property to be wholly held by the CST. I am unclear and have no recollection as to why Evelyn's one[-]half interest in the property was not deeded to the CST, it appears to be inadvertence.

However, in March 2000, shortly after Evelyn funded the CST, Olson wrote a

---

[6] The full value of the Lewis County commercial property at the time Evelyn admitted Gib's will to probate in 1999 was $627,000. This was $2,000 more than the $625,000 that Gib designated for the CST.

11

letter to Gib and Evelyn's daughter that stated:

> As you know, we already transferred Gib's half interest in the [Lewis County commercial] property to you and your Mom as co-trustees under the Credit Shelter Trust. We may be able to squeak out a little bit more but I'll have to check the numbers again.

Because there are material issues of fact about Evelyn's intent regarding the disposition of her community interest in the commercial property, the trial court erred by imposing a constructive trust on summary judgment.

We reverse and remand for further proceedings.[7]

_Brennan, J_

WE CONCUR:

_Andrus, A.C.J._

---

[7] The Estate assigns error to the trial court's failure to award it attorney fees below, and both parties request fees on appeal. Because neither party has yet prevailed, the attorney fee awards for trial and on appeal shall be determined by the trial court upon resolution of the case on remand. See RAP 18.1(i); Stieneke v. Russi, 145 Wn. App. 544, 572, 190 P.3d 60 (2008).