IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JERRY LEE REDWINE AND | ) | |
| DAVID JAMES REDWINE, | ) | No. 36551-4-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| VIRGIL DALE REDWINE AND | ) | |
| TERA REDWINE, | ) | |
| | ) | |
| Respondents. | ) | |

STAAB, J. —Jerry Redwine sued his brother and sister-in-law, Virgil and Tara

Redwine, claiming they violated two trust agreements to convey real property to Jerry.[1]

Following a bench trial, the superior court dismissed Jerry's complaint. Jerry appeals,

raising more than 50 assignments of errors and no identifiable legal issues. We decline to

review most of these assignments. After reviewing the record and briefs, we are satisfied

that the trial court's findings are supported by substantial evidence and those findings

support the court's conclusion. Jerry's claim for a constructive trust for property known

as Unit 120 was filed beyond the statute of limitations. At trial, he failed to prove either

---

[1] Since the appellant and respondent share the same last name, we refer to them
using their first names. No disrespect is intended.

an express or constructive trust for property known as Unit 45. We affirm the superior

court's decision.

## FACTS

The following facts are taken primarily from the trial court's memorandum

decision and findings of fact.

A.    UNIT 45

Jerry Redwine purchased agriculture property known as Water Delivery Unit 45

(Unit 45) in 1973. In 1987, the bank foreclosed on his mortgage. The following year, the

bank informed Jerry that it would sell Unit 45 to a friendly buyer if Jerry would waive his

right of redemption.

At trial, Jerry testified that he discussed repurchasing Unit 45 with his brother,

Virgil, at a family dinner. The parties disagree on what was said or agreed. Jerry

testified that Virgil promised to be a strawman buyer and purchase Unit 45 for Jerry with

the understanding that once Jerry paid all costs and expenses, Virgil would transfer the

property back to Jerry. Virgil disputed making such a promise, but the trial court found

an oral promise to transfer Unit 45 back to Jerry upon payment to Virgil of all expenses

related to the purchase and maintenance of Unit 45. The court also noted that "[a]s with

most oral promises between family members, however, the parties never discussed

specific details about what would happen if Jerry failed to reimburse Virgil for all funds

and expenses related to Unit 45 or what would happen if Virgil paid off Unit 45 earlier than expected." Clerk's Papers (CP) at 94.

Virgil purchased Unit 45 from the bank in 1989. From 1989 to 2004, Jerry farmed Unit 45 and invested money into his farming operation on the property. Jerry made improvements to Unit 45, including planting an orchard, installing an irrigation system, and installing a couple of mobile homes. Starting in 1998, he leased out the crop circle to various third parties to farm. According to Jerry, from 1989 to 2003, he made regular payments to Virgil each fall that covered all Virgil's expenses for Unit 45 according to their agreement. Virgil maintains that any payments he received from Jerry were under a lease agreement between the two from 1989 to 2002. Virgil stated that the lease agreement ended in 2002 when Jerry failed to make payments.

In 2004, Virgil stopped allowing Jerry to farm Unit 45 and began leasing the property directly to various third parties. During that time, he would sometimes send Jerry a portion of the rent as a management fee. According to Virgil, starting two years after he purchased Unit 45, Jerry would frequently approach him, requesting that Virgil deed Unit 45 to a friend or Jerry himself. Virgil maintains that he never agreed to such a transfer and that Jerry never reimbursed him for any expenses incurred in the real estate contract. Virgil states that Jerry was served with a notice of eviction sometime around 2013 but failed to leave the property and continued to live there without paying rent. Jerry admits that in 2004 he was unable to make a payment to Virgil and has not made a

3

payment to him since. Jerry said he arranged for third parties to sublease the crop circle and make payments directly to Virgil in place of his payment. Jerry sent a letter to Virgil proposing the change, but Virgil never responded. Jerry also sent letters to Virgil requesting the property be deeded to his daughter without response. Jerry made multiple attempts to agree with Virgil about the payment for Unit 45, but there was never any conversation between the two about how future payments would be made. Jerry continued to farm the orchard portion of the property until 2008, when he leased that portion to Seth Weeks. Weeks paid Jerry under the lease until 2015, when he started making payments directly to Virgil. From 2007 to 2012, Jerry received payments from Virgil in random and oddly specific amounts. Jerry assumed these payments were his share of the rent paid by the third parties leasing the property from Virgil. Virgil stated that these were management fees paid to Jerry for supervision of and improvements to Unit 45. Virgil paid off the amount due on Unit 45 in 2004. Before paying off the bank loan, Virgil made all the loan payments, tax payments, and insurance on the property. Jerry did not learn that Virgil had paid off the loan on Unit 45 until 2011. After learning that the property had been paid off, Jerry mailed Virgil a letter containing a deed to transfer the property back to Jerry. Virgil did not respond. Jerry brought a claim against Virgil for a constructive trust against Unit 45 in 2013. Since Jerry was claiming there was an agreement to hold the property in trust and return it upon payment of all expenses, the trial court felt that an express trust might be a more appropriate claim and thus

4

addressed that as well in its decision. Regardless, the trial court rejected Jerry's claim for an express or constructive trust because there was no fraud in the creation of the trust and no unjust enrichment. The trial court found that Jerry discussed Unit 45 with Virgil, and Virgil made an oral promise to purchase Unit 45 and transfer the property back to Jerry, provided that Jerry reimburse him for all payments and expenses. However, there was no agreement about what would happen if Jerry failed to reimburse Virgil for expenses or if Virgil paid off the property early. Virgil made all loan, insurance, and tax payments for Unit 45 and remained solely liable for the expenses of the property. The trial court did not find credible Jerry's argument that there was an agreement that the rental payments from third parties substituted as payments. After 2005, Jerry continued living on the property without making payments to Virgil, received payments from his lease of the orchard, and received money from Virgil from 2007 to 2012. Thus, the court found that Virgil had not been unjustly enriched.

B.   UNIT 120

In 1993, brothers Jerry, Virgil, and David Redwine created a trust naming themselves as trustees using a document drafted by Jerry. In this trust, the brothers placed four acres of family land where their mother lived (Unit 120) with the understanding that it would be distributed among the three of them when their mother

5

died. In 1998, the brothers transferred Unit 120 to Virgil at Virgil's request.[2] Virgil orally agreed to transfer Unit 120 back to the trust once their mother passed away. According to both Jerry and David, the understanding was that the transfer would take place as soon as their mother passed away.

Their mother died in April 2006. About two weeks after their mother's passing, Jerry and David called Virgil requesting he divide up the property. About the same time, Jerry sent a letter to Virgil demanding that he "act in a righteous and honorable way" concerning Unit 120 and claiming an interest in the property. CP at 103. He also asserted that Virgil had wrongfully taken ownership of the property. Jerry stated that Virgil "had no lawful and righteous authority" to move others onto the property and demanded that Virgil "do what is right." CP at 103. He asked Virgil to sell the property and deposit the proceeds into the trust. Virgil refused to speak with his brothers and called them vultures. He later told David that he needed time to make arrangements. In 2007, Virgil also sent Jerry a letter saying, "Despite what you think, I cannot sell a house overnight." Report of Proceedings at 242. Jerry could not recall if he had any conversations with Virgil regarding Unit 120 after receiving the letter. In April 2012, Jerry received a check for $15,000 from Virgil, which Jerry believed was a partial payment for his interest in the property. Payment on the check was later stopped when

---

[2] Virgil told his brothers that he needed the property in his name to obtain a loan.

Tara, Virgil's wife, found out about it. In 2012, Virgil also made payments to David for the property, although it is not clear whether Jerry was aware of those payments. In 2013, Jerry filed suit against Virgil and Tara, seeking the declaration of a constructive trust against Unit 120.[3] After Jerry presented his case, the defendants moved to dismiss the case as barred by the statute of limitations.

The trial court found the document Jerry drafted in 1993 created a trust holding their mother's property, Unit 120, with Jerry, Virgil, and David as trustees. In January 1998, Jerry and David as trustees signed a deed transferring Unit 120 to Virgil at Virgil's request in exchange for an oral agreement from Virgil that he would hold Unit 120 as if it were still part of the trust and transfer the property back to the trust after their mother died. However, the trial court determined that the constructive trust claim was subject to a three-year statute of limitations that starts running when a beneficiary discovers or should have discovered that the trust has been terminated or repudiated by the trustee. The court found that Jerry discovered or should have discovered that the trust was terminated or repudiated by Virgil in April 2006 when Virgil refused to place Unit 120 back into the trust. Thus, the court concluded that the statute of limitations for the constructive trust claim began to run in April 2006, and the claim was barred.

---

[3] The initial filing was a petition to foreclose. However, it was later amended to a claim for a constructive trust.

ANALYSIS

A. COMPLIANCE WITH RULES OF APPELLATE PROCEDURE (RAPs)

As a preliminary matter, we address the briefing and arguments raised by the appellant, Jerry Redwine. Jerry is representing himself and is not an attorney. While we respect his efforts, as a pro se appellant, he is held to the same standard as an attorney. *State v. Marintorres*, 93 Wn. App. 442, 452, 969 P.2d 501 (1999).

Under RAP 10.3(a)(4), an appellant shall set forth a concise statement for each error alleged by the trial court. Mr. Redwine identifies at least 50 assignments of error, essentially going through each paragraph of the trial court's memorandum decision, findings of fact and conclusions of law, judgment, and trial exhibits, while briefly discussing whether and to what extent he agrees with them. Throughout his brief, he disputes facts but does not identify any legal issues. In the 42 pages of his brief, Jerry cites one case, and that is only to disagree with the trial court's analysis of that case.

Jerry misunderstands our role on appeal. During a bench trial, the judge sits as the finder of fact. "An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses." *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999) (citing *State v. Snider*, 70 Wn.2d 326, 327, 422 P.2d 816 (1967)). The Court of Appeals is not a trial court and we do not provide a second opportunity to argue and decide disputed facts. "The power of this

court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not." *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 959, 350 P.2d 1003 (1960), opinion amended on denial of reh'g, 56 Wn.2d 957, 353 P.2d 671 (1960).

As an appellate court, we do not reweigh the evidence. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). Instead, following a bench trial, we review the record in a light most favorable to the prevailing party to determine if substantial evidence supports the trial court's findings of fact and, if so, whether the findings support the conclusions of law. *Id.* at 484-85. We consider specific issues raised in the briefs that include citation to legal authority and references to the relevant portions of the record. RAP 10.3(a)(6). We need not consider arguments that are unsupported by meaningful analysis or authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

While Jerry assigns error to almost every finding made by the trial court, he fails to identify any legal issues pertaining to those assignments of error or cite to any legal authority. We decline to address the bulk of his assignments of errors.

## B.   UNIT 120

To the extent that Jerry challenges the trial court's conclusion that the statute of limitations barred his claim for a constructive trust of Unit 120, we find no error. At trial, Jerry alleged that his brother Virgil took their mother's property in constructive trust and

then refused to convey it back to the trust upon her death.  The trial court found that even if a constructive trust was proved, it was barred by the statute of limitations.

The statute of limitations for a constructive trust is three years.  *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995).  The statute begins to run when a "beneficiary discovers or should have discovered the wrongful act which gave rise to the constructive trust."  *Id*. n.2.

Here, the testimony at trial from both Jerry and David was that their understanding of their agreement with Virgil was that he would convey the property back to the trust upon their mother's death.  Their mother died in 2006.  Two weeks later, they both called Virgil about Unit 120, and he refused to speak with them.  Jerry also wrote a letter to Virgil demanding that he behave "righteously" concerning the property and saying that Virgil had wrongfully taken possession of it, indicating that he was aware Virgil had violated the agreement.  Thus, the statute of limitations began to run in 2006.  Jerry's lawsuit was filed in 2013, seven years later.  Although conversations, payments, and attempts to negotiate a settlement allegedly occurred between Virgil and the brothers for the property in 2007 and 2012, Jerry's 2006 letter clearly indicated that he believed Virgil violated the agreement.  The trial court found that Jerry knew or should have known in 2006 that Virgil was terminating or repudiating the trust holding of Unit 120.  The trial court did not err in concluding that the statute of limitations barred Jerry's claim for constructive trust holding of Unit 120.

10

C.  UNIT 45.

While not articulated by Jerry in his briefing, we also review the trial court's finding that Jerry failed to meet his burden of proving that Virgil held Unit 45 in a constructive or express trust for the benefit of Jerry.

The trial court concluded that Jerry's claim pertaining to Unit 45 was for an express trust, not a constructive trust. At trial, Jerry testified that he and Virgil had an express agreement that Virgil would buy Unit 45 in trust for Jerry. An express trust is defined as "'a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.'" *In re Marriage of Lutz*, 74 Wn. App. 356, 365, 873 P.2d 566 (1994) (quoting 1 William F. Fratcher, Scott on Trusts Sec. 2.3, at 41 (4th ed. 1987).

An express trust involving a real estate transfer cannot be established by parol evidence unless actual or constructive fraud is involved in the original transaction. *Dowgialla v. Knevage*, 48 Wn.2d 326, 335-36, 294 P.2d 393 (1956); *Lutz*, 74 Wn. App. at 365; *Arnold v. Hall*, 72 Wash. 50, 53, 129 P. 914 (1913). The subsequent failure of the trustee to return the trust property does not prove bad faith in the original transaction. *Lutz*, 74 Wn. App. at 365-66.

Here, because Jerry claims an express manifestation of intent to form a trust, a claim for express trust suits his case better than a constructive trust. However, Jerry's

11

express trust claim rests on parol evidence. Although some written communications were presented at trial, the communications were unilateral from Jerry to Virgil and did not establish a mutual agreement between the two parties. And while Jerry claimed Virgil was acting in bad faith for not conveying the property after the loan was paid, he failed to present any evidence of actual or constructive fraud or bad faith on the part of Virgil *at the time of entering into the agreement*. The trial court found that parol evidence was inadmissible to show an express trust to transfer real property because there was no evidence of actual or constructive fraud on the part of Virgil when he entered into the transaction.

In his pleadings, Jerry also claimed that Virgil held Unit 45 in constructive trust. A court typically imposes a constructive trust when there is clear, cogent, and convincing evidence of an equitable duty to convey a piece of property to another. *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). Constructive trusts are generally imposed in cases of fraud or unjust enrichment. "A constructive trust is an equitable remedy that 'compel[s] restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means, gains something for himself which, in equity and good conscience, he should not be permitted to hold.'" *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 86-87, 18 P.3d 1144 (2001) (quoting *Scymanski v. Dufault*, 80 Wn.2d 77, 88, 491 P.2d 1050 (1971)).

Constructive trusts may be found when an oral promise to hold real estate in express trust is made in bad faith. *Lutz*, 74 Wn. App. at 367. Parol evidence is admissible to establish the existence of a constructive trust. *Id.* at 366. Similar to an express trust, actual or constructive fraud must be demonstrated before a constructive trust involving real property can be established by parol evidence. *Id*. at 364-65. The fraud must be present at the inception of the transaction. *Id.* A breach of an oral agreement does not itself establish fraud in the original agreement. *Dowgialla v. Knevage*, 48 Wn.2d at 334.

Constructive trusts may also be imposed "where the retention of the property would result in the unjust enrichment of the person retaining it." *Consulting Overseas Mgmt., Ltd.*, 105 Wn. App. at 87 (internal quotation marks omitted) (internal citations omitted). For example, "[a] constructive trust may arise if consideration for the acquisition of property is furnished by one party and title is taken in the name of another so that retention of the property would result in an unjust enrichment. The deciding factor is whether the party who possesses the property has been unjustly enriched." *Yates v. Taylor*, 58 Wn. App. 187, 190-91, 791 P.2d 924 (citations and footnotes omitted).

Where the statute of frauds prevents Jerry from proving an express trust through parol evidence, he may prove a constructive trust if he can show that Virgil's agreement to hold Unit 45 was made in bad faith. Similar to his claim for an express trust, however,

13

Jerry has not presented any evidence of actual or constructive fraud at the inception of the transaction in 1987.

Nor did Jerry prove unjust enrichment. The trial court found that Jerry failed to prove that he paid Virgil for all of the expenses related to Unit 45. Virgil was solely responsible for the loan payments, taxes, and insurance. While Jerry initially made payments to Virgil, those payments ended in 2004 while Jerry has continued to live on the property. Jerry accepted rental payments from third parties without paying Virgil and even received financial assistance from Virgil for several years. Although Jerry believes that Virgil accepted payments from third parties leasing the crop circle in lieu of payments from Jerry, he presented no evidence that such an agreement was reached.

The evidence or lack of evidence introduced at trial supports the trial court's conclusion that Jerry failed to prove that Virgil held Unit 45 in either a constructive or express trust for Jerry's benefit.

D.   ATTORNEY FEES

Jerry requests that he be awarded about $100,000 in attorney fees and that the court fine Virgil and Tera $1,000,000 in punitive damages. As the respondent, Virgil is also requesting attorney fees under RAP 18.9.

RAP 18.1 provides a process whereby eligible parties may request the court grant their attorney fees. "RAP 18.1(b) requires a party to devote a separate section of the appellate brief to the fee issue." *Lakes v. von der Mehden*, 117 Wn. App. 212, 220, 70

14

P.3d 154 (2003). This section must contain more than simply citations to the RAP and statutory provisions. *Id.*

Attorney fees may also be imposed under RAP 18.9. "The appellate court on its own initiative or on motion of a party may order a party or counsel, or a court reporter or authorized transcriptionist preparing a verbatim report of proceedings, who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." RAP 18.9(a). "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008).

"A frivolous action is one that cannot be supported by any rational argument on the law or facts." *Id.* at 697. An appeal is not frivolous if it presents debatable issues upon which reasonable minds might differ. *Holiday v. City of Moses Lake*, 157 Wn. App. 347, 236 P.3d 981 (2010). Raising one meritorious issue will not result in a finding of frivolousness, even if the outcome of other issues are not debatable. *Green River Cmty. Col. Dist. No. 10 v. Higher Ed. Personnel Bd.*, 107 Wn.2d 427, 730 P.2d 653 (1986). Courts resolve all doubts as to whether an appeal is frivolous in favor of the appellant. *Wood v. Thurston County*, 117 Wn. App. 22, 68 P.3d 1084 (2003).

Here, Jerry fails to provide any support for his request for attorney fees. Therefore, the court will not consider his request. Although there is little merit to Jerry's appeal, it is not utterly devoid of merit. He appeals the court's dismissal of the Unit 120 claim, referring to evidence he presented at trial that he still hoped, up until 2012, that Virgil would pay him his fair share of the property. This argument is not entirely baseless. Moreover, although some of his arguments are baseless, he presented evidence at trial to support some of the findings of fact he contested on appeal in regard to Unit 45. Thus, we likewise deny Virgil's request for attorney fees under RAP 18.9.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

16